[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DISSOLUTION FINANCIAL ORDERS
The court, Barall, J., entered a decree dissolving the marriage in this case, and thereafter a series of motions, discovery contests, and assignments for hearing were held. This matter took up a number of file folios, and involved every family judge assigned to the Judicial District of Hartford for the past six years. For reasons that will be explained, this court finds that the actions of the parties and counsel for the plaintiff in the court system took a rather simple case, and made it a cause celebre. Few issues of significance to the public were decided, and the parties and counsel all lost in the process. The court process did not function to minimize the contest, and the parties were allowed to follow through on the most trivial of pursuits. This was not a long-term marriage and the parties had no children. They have simple assets, and the protracted dispute was well out of proportion to need or importance.
The plaintiff was permitted to remain in Arizona while this case proceeded in the post-judgment phase of discovery and hearing. She may have appeared for a Level II pretrial, but the defendant did not appear, so it did not take place. She testified through her deposition, and the defendant was permitted time during trial to respond to her deposition, insofar as counsel in Arizona would not continue with his cross-examination, citing both Arizona court rule, and the plaintiff's stamina and medical CT Page 5727 condition. The plaintiff testified concerning the marriage, and claimed that the defendant was physically and emotionally abusive of her. She agreed that he was only partially appraised of her mental health issues at the time of their marriage. During the marriage she was treated for bi-polar disorder, and Crone's disease. She was symptomatic during the marriage. The parties moved while the defendant was in the military and resided in Italy for a time. After their move to Maine, he left the military for a position at a military manufacturer in Connecticut and they bought the home in Avon. She claimed that during 1993, his abuse became worse, and that she decided to go to Florida. They did some marriage counseling with the VA, but she did not believe that there was hope for the marriage. She liked warmer weather, and had friends in Jacksonville. The defendant testified that he was applying for employment in Florida to meet her request that they live in a warmer climate. He retained his home in Phoenix, Arizona, but there was no testimony that they considered relocating there together, even though she currently resides there.
The plaintiff claimed that she was forced to compromise her career because of his moves while with the military. He testified that she was a civilian employee of the military and did not have the employment benefits that he did, nor did she have the desire to develop a career. She claimed that her father loaned them Ten Thousand ($10,000.00) Dollars which was recovered in a separate civil action in Arizona. The plaintiff is disabled, and has no employment. She was unable to testify at length at her deposition. Based upon the absence of the plaintiff, and the fact that the deposition was not videotaped, the court could make no assessment of the plaintiff except through the printed word, a very poor substitute for testimony. The court was asked to assess credibility of the moving party with scant evidence. The decision to proceed on the deposition was harmful to the plaintiff's case.
The defendant testified that the plaintiff never was happy wherever she lived, and that he tried very hard to please her. He claimed, and the testimony was established, that the cause of the breakdown of this marriage was the bigamous marriage of the plaintiff to one Grady Bloodworth. Apparently, when the plaintiff left to visit friends in Florida, she met this man, married him, came back to Connecticut with him when the defendant was still in Florida trying to reunite with her, and she took possessions and cash with her. The plaintiff was under a court order to return over Thirty-five Thousand ($35,000.00) Dollars, and only CT Page 5728 complied with that order partially. She took all of her jewelry, which was depicted on an insurance video which the parties had produced for insurance purposes prior to their separation.
The plaintiff's marriage to Mr. Bloodworth was annulled shortly afterwards, and the plaintiff had a suicide attempt. The plaintiff tried to blame the defendant for this conduct, but the court finds that to be unpersuasive. The plaintiff's conduct in this matter was aberrant and the testimony proffered through the deposition concerning the conduct of the defendant was pale in comparison. The parties certain appear to have had a rather dysfunctional relationship, but when the plaintiff sought to leave that relationship, she prejudiced her claims for a larger share of marital assets.
In cross-examination, the defendant angrily responded that the plaintiff did not "leave" him certain funds, because she was unable to "steal" them, because the funds were in his name alone. He insisted that he was unable to note over Forty Thousand ($40,000.00) Dollars in accounts in his name alone on his financial affidavit, filed early in this case. In April of 1993, he filed a Motion for Alimony (#103-Pl. Exh. 19), and alleged therein that the plaintiff had stolen certain funds, while he did not know what was in his own accounts.
The marital counselor (Pl. Exh. 40) from the VA alluded to the breakdown in November of 1992. Defendant's Exh. 53, his progress notes, alluded to the VA marital counseling, and referred to a marital "impasse" on December 11, 1992, and indicated that Mrs. Chan was going to move out of state and separate and/or divorce. He claimed disabilities from the VA, but made improvements to his home including the construction of a gold fish pond. He had friends help, but also worked on this himself. He did most of the upkeep and repairs on the Connecticut home, but hired help for the Arizona house. His disabilities have not hindered his basic upkeep of the homes, although he claims that there are many things that he cannot do, and that there are many things that need to be done on the properties.
He agreed that Judge Sullivan had suggested that the defendant go to Florida to do an appraisal of the property in Florida, which had been taken by the plaintiff. The defendant chose not to use the IRA funds, to do that and to take her deposition in Florida. CT Page 5729
He agreed that he left some of the repairs to the Avon property to the disposition of the divorce action, in case the court awarded the home to her or to them jointly, so that she could participate in the cost of the repairs which the Health authority would require. He denied that he was interested now in "closure" so that he could look to the plaintiff for contribution for those repairs.
On redirect, the defendant claimed that he suffered from depression also because of financial issues. He indicated that he has not had the flexibility to refinance their variable mortgage, even though mortgage rates have declined. He has also dealt with all of these things while the contentious divorce has been going on. He is stressed concerning these issues. He claimed that the house has equity, but that he cannot reach that equity for the purpose of repairs, including to the septic system. He claims to be suffering because of what she did to him.
The defendant had rested, but questioned the validity of the bill for attorneys' fees in this matter. The current bill is approximately Two Hundred, Forty-five Thousand ($245,000.00) Dollars. The court allowed the defendant to inquire of counsel for the plaintiff, under oath, who was asked why the bill was so high. Counsel responded that was occasioned by the defendant's misconduct. The fee agreement counsel had with the plaintiff was for attorneys' fees of One Hundred, Ninety-five ($195.00) Dollars per hour, and Thirty ($30.00) Dollars per hour for clerical help. The attorney-client relationship has spanned over five (5) years, or approximately Forty-nine Thousand ($49,000.00) Dollars per year including costs.
The defendant went through a number of dates on the bill, including the times of two hours, one hour, and the like for the preparation of repetitive subpoenas to the defendant. In response, counsel indicated that there was a need for repetitive subpoenas in that the defendant would only partially comply with the subpoenas, and the need to review and revamp those subpoenas.
The court allowed the defendant to subpoena Attorney Jack Miller, with whom the plaintiff's counsel claimed he had had two hours of consultations on September 20, 1994. Mr. Miller testified that he had only a vague recollection of any conversation with the defendant, and that he had never opened a file or received any funds from him. If he had had documents, they had been destroyed. While there may have been a contact, CT Page 5730 there was no actual representation. The defendant claimed that he had never met Attorney Miller, and that Mr. Somers was lying. The bill for those services do not appear to be proved.
There were instances where the claim for fees was not sustained, and the court is of the opinion that the fees far exceeded what was the reasonable value of the case, in light of the circumstances of the assets of the marriage. As a concern, the court notes that counsel continued to engage in proceedings with the defendant, which had little if any practical or legal value for the ultimate issues which are at the core of this litigation. Moreover, the plaintiff has a variety of health concerns which militate against protracted litigation. If the legal fees claimed are paid, there will be no marital asset for the parties. The plaintiff has been absent for the bulk of this litigation, and it appears that counsel for the plaintiff and the defendant developed a contested relationship of their own.
The defendant examined Attorney Summers on the validity of his bill at length. It was clear from the testimony that Attorney Summers billed each and every interaction with the plaintiff and the defendant, and it was also clear that the level of conflict in this action was high. What is incumbently clear, however, is that the matter was overly litigated, to the extent that the claim for attorneys' fees, if paid, would diminish the value of the marital estate by more than one-half. The decision to carry on was blamed on the defendant by the plaintiff, and on the plaintiff's counsel by the defendant. The reasonableness of the bill to the plaintiff, which the plaintiff seeks reimbursement from the defendant as part of the distribution of marital assets, must be assessed with respect to the attorney-client relationship between the plaintiff and counsel. For counsel to continue to engage the defendant, who was not willing to agree to very much in the matter, worked to the detriment of his client. This court cannot countenance, or approve of a bill for services rendered in a case which asks for compensation which equals more than one-half of the entire marital estate. The findings of the court on the issue of fault also belie the activity on this file.
The plaintiff relies on her Post-trial brief. It is extensive, and was billed by counsel at his agreed to rate. The case did not require such a brief. His statement would have been sufficient. Certainly, the attendance of the plaintiff would have helped. CT Page 5731
The defendant claims that the home in Arizona was a pre-marital asset and therefor is not to be considered in the distribution. He claims that her bigamous marriage should prevent the court from awarding any periodic alimony, regardless of her claimed mental incapacities. He argues that while she used those infirmities to insulate herself from the legal system, her lawyer has made him a prisoner of it. He claims that Attorney Somers has lost objectivity in light of his financial interest in the outcome of the case. He claims reimbursement for the sums paid to secure bank records which were stolen by her. He makes no offer of what might be an equitable distribution of assets of the marriage.
In light of the facts presented, the court makes the following orders:
1) As to real estate: The court finds that the Arizona home is a premarital asset, and that any claim by the plaintiff's father was satisfied from the Arizona civil judgment. The court orders that any interest that the plaintiff claims is transferred to the defendant, and the property shall be his alone. He shall be solely responsible for all mortgages and taxes, on the subject property.
The court orders that the interest in the marital home in Avon, Connecticut be transferred by operation of law to the defendant. The court orders the release of the lis pendens, and finds that the fees charged are unconscionable and unenforceable. The defendant shall be responsible for all outstanding mortgages and taxes on the Avon property, and shall continue to pay homeowners insurance and all health department repairs, and hold the plaintiff harmless from all of those expenses. If her name appears on any of those debts, he is to refinance and remove her name within one (1) year from the date of judgment.
2) As to personal property: The parties shall retain all personal property currently in his or her respective possession.
3) Lump sum alimony: The defendant shall pay to the plaintiff as lump sum alimony the sum of Seventy-five Thousand ($75,000.00) Dollars, in payments of no less than Fifteen Thousand ($15,000.00) Dollars per year for five (5) years. Nothing in this order should prevent the defendant from discharging this debt prior to the expiration of five (5) years. In making this award, the court finds that the plaintiff retained approximately CT Page 5732 Forty Thousand ($40,000.00) Dollars in case, and secured possession of many items of personalty during her trip to Connecticut. Furthermore, her conduct was the principal cause of the breakdown of the marriage.
The court finds that it would be inappropriate under these circumstances to award periodic alimony to the plaintiff.
4) Attorneys' fees: The plaintiff shall be responsible for her own attorneys' fees. She must bear some responsibility for the extent of litigation which spawned this huge bill, and it appears that the defendant copied the tactics of her counsel to keep the parties in court.
These financial orders shall become part of the judgment dissolving the marriage.
DRANGINIS, J.